J-S41028-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN WHITMORE | : | |
| | : | |
| Appellant | : | No. 124 WDA 2023 |

Appeal from the Judgment of Sentence Entered September 26, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0002338-2022

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                     **FILED: JANUARY 8, 2024**

Appellant, Steven Whitmore, appeals from the judgment of sentence entered on September 26, 2022, following his bench trial conviction for simple assault, 18 Pa.C.S.A. § 2701(a)(1).  We affirm.

We briefly summarize the facts of this case as follows.  On February 25, 2022, police responded to an emergency call to the home of Jodi Moore in Crafton, Pennsylvania.  Moore called police after falling down a flight of steps inside her home and sustaining injuries.  She briefly lost consciousness and called the police when she awoke.  Moore told the emergency dispatch operator and responding Crafton police officer, Sergeant Jason Chedwick, that she was frightened of Appellant, her boyfriend, who was the only other person present and living at the residence.  Sergeant Chedwick arrived at the

---

[*] Former Justice specially assigned to the Superior Court.

residence approximately three minutes after Moore called the police. Upon arrival, Sergeant Chedwick observed that Moore was intoxicated, visibly shaking, and crying. She told Sergeant Chedwick that Appellant "grabbed [her] by the throat and choked her to the point where her throat was hurting her," he hit her, and later when she was sitting at the top of the stairs, he "pushed her down the steps, and she woke up a few hours later." N.T., 9/26/2022, at 37-40. Sergeant Chedwick observed a bruise above Moore's hip, bumps on her head, and red marks around her neck. Moore went to the hospital where she was diagnosed with a fractured rib and a bump on her head. At trial, Moore testified that she was intoxicated and did not remember how she fell down the stairs. She further testified that before police arrived, Appellant told her that "a ghost pushed" her. *Id.* at 11. At trial, Moore testified that a ghost did not push her. Appellant testified on his own behalf and denied choking Moore or pushing her down the stairs.

At the conclusion of a bench trial on September 26, 2022, the trial court found Appellant guilty of simple assault. Appellant waived his right to a pre-sentence investigation report and proceeded directly to sentencing. The trial court sentenced Appellant to 12 months of probation, but granted Appellant's request to remain at the Renewal Center for four days to complete a drug and alcohol treatment program. This timely appeal resulted.[1]

_____

[1] Appellant filed a timely post-sentence motion on September 29, 2022. On January 26, 2023, Appellant filed a notice of appeal before the trial court ruled

*(Footnote Continued Next Page)*

- 2 -

On appeal, Appellant presents the following issues[2] for our review:

1. Did the trial court err by precluding cross-examination of the alleged victim, who was the [Commonwealth's] key witness, concerning a pending [] criminal charge which carried

_____

on his post-sentence motion and one-day before the 120-day deadline for entry of an order denying Appellant's post-sentence motion by operation of law pursuant to Pa.R.Crim.P. 720(B)(3)(a). On January 31, 2023, the trial court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on February 21, 2023. On February 13, 2023, before Appellant filed his concise statement, this Court entered an order directing Appellant to show cause why the instant appeal should not be quashed as premature. *See* Pa.R.Crim.P. 720 ("No direct appeal may be taken by a defendant while his or her post-sentence motion is pending."); *see also Commonwealth v. Borrero*, 692 A.2d 158, 160-161 (Pa. Super. 1997) (quashing appeal as interlocutory when no order has been entered on the record on a timely filed post-sentence motion). On February 21, 2023, Appellant acknowledged that his notice of appeal appeared premature. On February 27, 2023, this Court directed the trial court's department of court records to enter an order denying Appellant's post-sentence motion by operation of law. We further discharged our February 13, 2023 order to show cause and deemed Appellant's notice of appeal timely filed. On April 4, 2023, the trial court's department of records filed an order denying Appellant's post-sentence motion by operation of law. As such, this appeal became ripe for review upon the entry of the order denying Appellant's post-sentence motion. *See Commonwealth v. Ratushny*, 17 A.3d 1269, 1271 n.4 (Pa. Super. 2011). On April 18, 2023, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

[2] We have reordered Appellant's issues for ease of discussion. Moreover, we note that Appellant also presented a challenge to the sufficiency of the evidence which the trial court addressed in its Rule 1925(a) opinion. However, Appellant does not present that issue and fails to develop it on appeal. Thus, we conclude that Appellant abandoned his sufficiency claim and find it waived. *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (citation omitted) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); *see also Commonwealth v. Heggins*, 809 A.2d 908, 912 (Pa. Super. 2002) (an issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived).

mandatory penalties, that had been filed [against her] by the same police department [involved in the instant matter] and was being prosecuted [] by the same district attorney's office which was prosecuting [Appellant]?

2. Did the trial court err – when it imposed sentence – by failing to credit [Appellant], in accord with 42 Pa.C.S.A. § 9760, for time spent in custody (May 29, 2022 – September 26, 2022 (120 days))[?]

Appellant's Brief at 5.

First, Appellant contends that the trial court erred by precluding cross-examination of Moore concerning a pending criminal charge she faced in the same county when she testified in this matter. *Id.* at 14. He claims she was subject to impeachment regarding her "bias, interest and motive for appearing and testifying" because of her potential prosecution on the outstanding charge. *Id.* More specifically, Appellant contends that Moore's trial for driving under the influence (DUI) of alcohol was "looming large," scheduled 17 days after this trial, and she faced "a possible mandatory prison sentence, possible mandatory fine in the range of $1,000[.00] or more, and possible driver's license suspension[.]" *Id.* at 15. Appellant argues that he should have been permitted to question Moore about "what – if anything – she expected or anticipated receiving from the district attorney's office, police department, or victim advocate in exchange for testifying against" Appellant, which "profoundly impacted [] Moore's credibility as a witness." *Id.* Appellant argues that the trial court erroneously sustained the Commonwealth's objections into this line of inquiry. *Id.* at 16. Appellant maintains that "the evidence was exceptionally probative" and "would have

- 4 -

explained [that] Moore called the police on February 25, 2023, when [Appellant] had not assaulted her, [] because she needed leverage for her own criminal case." ***Id.*** at 20. Appellant further claims that cross-examination regarding Moore's DUI charge "would have also explained why she initially testified she wanted [Appellant's] court case to go away and that she did not remember what had happened, it was because she did not want to perjure herself by implicating [Appellant] in a crime he didn't commit." ***Id.***

We adhere to the following standards and legal precepts:

Preliminarily, we recognize that the scope and limits of cross-examination are within the discretion of the trial court and its rulings will not be reversed absent a clear abuse of that discretion or an error of law. Nevertheless, a witness may be cross-examined as to any matter tending to show interest or bias.

When a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against [her] within the same jurisdiction, that possible bias, in fairness, must be made known to the jury. Even if the prosecutor has made no promises, either on the present case or on other pending criminal matters, the witness may hope for favorable treatment from the prosecutor if the witness presently testifies in a way that is helpful to the prosecution. And if that possibility exists, the [factfinder] should know about it.

The [factfinder] may choose to believe the witness even after it learns of actual promises made or possible promises of leniency which may be made in the future, but the defendant, under the right guaranteed in the Pennsylvania Constitution to confront witnesses against him, must have the opportunity at least to raise some doubt in the mind of the [factfinder] as to whether the prosecution witness is biased.

\* \* \*

The opportunity to impeach a witness is particularly important when the determination of a defendant's guilt or innocence depends on the credibility of the questioned witness. Furthermore, a witness' status as accuser does not obviate the need for full cross-examination. To the contrary, the victim, as accuser, must be subject to the utmost scrutiny if [her] accusations are to fairly form the basis of the criminal prosecution at hand.

\* \* \*

Not every denial of an accused's right to cross-examine with respect to an unrelated case requires a new trial. If the error did not control the outcome of the case, it will be deemed harmless. In making this assessment, we must consider the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. When there is a reasonable possibility that an error might have contributed to the conviction, the error is not harmless.

*Commonwealth v. Mullins*, 665 A.2d 1275, 1275–1278 (Pa. Super. 1995) (internal citations, quotations, original brackets, and footnote omitted).

Initially, we note that on this claim, the trial court found "that the issue was not properly preserved for purposes of this appeal." Trial Court Opinion, 4/18/2023, at 6. The trial court explained that this matter "proceeded to trial on two cases at the same time, as both involved [] Moore as the victim."[3] *Id.* at 5-6. The trial court claims Appellant "did not propound any questions regarding [] Moore's pending DUI charge during his cross-examination" in this

_____

[3] Appellant's other criminal case is not currently before this panel.

- 6 -

case, "rather, he reserved those questions for his cross-examination" later regarding the other criminal case. The trial court further determined:

> However, even if the issue had been raised during the examination of [] Moore [in this matter, the court concluded it] properly precluded cross-examination regarding [] Moore's pending DUI charge. Initially, whether [] Moore ha[d] pending charges [was] not relevant to the issue of whether [Appellant] committed the offense of [s]imple [a]ssault on February 25, 2022. A pending charge of DUI is not [an] appropriate area of inquiry for purposes of impeachment, as it is neither a conviction nor a crime involving dishonesty as required by the Pennsylvania Rules of Evidence. *See* Pa.R.E. 609 ("For purposes of attacking the credibility of any witness, evidence that the witness has been convicted of a crime… must be admitted if it involved dishonesty or false statement."). The only arguable basis for inquiry would be if [] Moore received a withdrawal of charges, special plea bargain, or other benefit from the Commonwealth as a result of her testimony in this matter. Counsel for [Appellant] did not place on the record that that was his intention regarding this line of inquiry. As such, [the trial court opined it] properly precluded this area of inquiry.

*Id.* at 6.

Here, we find the trial court's analysis flawed in two ways. First, upon review of the trial transcript, we conclude that Appellant properly preserved the issue. Pennsylvania Rule of Evidence 103 governs the preservation of a challenge to a ruling to exclude evidence:

**Rule 103. Rulings on Evidence**

(a) Preserving a Claim of Error. A party may claim error in a ruling to admit or exclude evidence only:

\*            \*            \*

(2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.

(b) Not Needing to Renew an Objection or Offer of Proof. Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

Pa.R.E. 103(a)(2)-(b).

While it is true that Appellant questioned Moore about her pending DUI charge during cross-examination on the companion case, her credibility was at issue in both cases, she testified only once, and the trial court definitively ruled on the question. During her testimony, defense counsel asked Moore about her pending DUI charge. N.T., 9/26/2022, at 27. When the Commonwealth objected, defense counsel replied that the evidence was "absolutely relevant," as "a pending charge [that] could be influencing her testimony one way or another" and, therefore, Appellant was "entitled to inquire into it and whether or not it came up with the District Attorney." *Id.* at 27-28. The trial court sustained the Commonwealth's objection and denied admission of the evidence at trial. *Id.* at 28. As such, Appellant's challenge was preserved when the trial court issued its definitive ruling sustaining the Commonwealth's objection and precluding the evidence after learning its substance. *See* Pa.R.E. 103(a)(2)-(b); *see also* N.T., 9/26/2022, at 27-28. Next, we reject the trial court's reliance on Pa.R.E. 609. Clearly that rule is inapplicable as it deals with prior convictions for dishonesty or false statements and Moore had not been convicted. *See* Pa.R.E. 609 ("For purposes of attacking the credibility of any witness, evidence that the witness

**has been convicted** of a crime… must be admitted if it involved dishonesty or false statement.") (emphasis added).

However, based upon our standard of review and the applicable law, we conclude that the trial court's error was harmless because it did not control the outcome of the case. Here, Moore consistently testified that she was intoxicated and did not recall how she fell down the stairs. *See* N.T., 9/26/2022, at 12 ("I was sitting at the top of the stairs, and I fell down the stairs. And [Appellant] said that a ghost pushed me down the stairs. But then he told the officers that I fell down because I was drunk. We were both intoxicated, so truly I don't remember… I'm sure a ghost didn't do it."). However, Sergeant Chedwick testified[4] that Moore "explained that she was

---

[4] Appellant initially objected to Sergeant Chedwick's testimony regarding what Moore told him as hearsay. N.T., 9/26/2022, at 40. The Commonwealth asserted that Moore's statements qualified as excited utterances, an exception to the hearsay rule. *Id.* Defense counsel asked the court to "reserve ruling on whether or not it's excited utterance until after cross-examination [to] develop some additional facts around it." *Id.* However, upon review of the record, defense counsel did not renew the objection and the trial court never ruled on the issue. As such, Appellant did not properly challenge Sergeant Chedwick's testimony as hearsay and, therefore, the trial court was free to consider it. Moreover, Appellant does not currently challenge Sergeant Chedwick's testimony on appeal. However, we are mindful of the following legal principles:

> Rule 803(2) of the Pennsylvania Rules of Evidence permits the admission of an excited utterance as an exception to the general rule that hearsay evidence is inadmissible. The Rule defines an excited utterance as a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event. [F]or a statement to be

*(Footnote Continued Next Page)*

considered an excited utterance, it must be made spontaneously and without opportunity for reflection:

> A spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which [s]he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from [her] reflective faculties.... Thus, it must be shown first, that the declarant had witnessed an event sufficiently startling and so close in point of time as to render her reflective thought processes inoperable and, second, that her declarations were a spontaneous reaction to that startling event.

[T]his Court further held that there is no clear-cut rule as to the time sequence required for a statement to qualify as an excited utterance, but rather that fact-specific determination is to be made on a case-by-case basis.

Additionally, in assessing a statement offered as an excited utterance, the court must consider, among other things whether the statement was in narrative form, the elapsed time between the startling event and the declaration, whether the declarant had an opportunity to speak with others and whether, in fact, she did so. Our Courts have not established a bright line rule regarding the amount of time that may elapse between the declarant's experience and her statement. Rather, the crucial question, regardless of time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance. It is the spontaneity of ... an excited utterance that is the source of reliability and the touchstone of admissibility.

*Commonwealth v. Gray,* 867 A.2d 560, 569–571 (Pa. Super. 2005) (internal citations, quotations and original brackets omitted; ellipses in original); *see also id.* at 577 (Moreover, "an unsolicited excited utterance to police that is made to obtain assistance during the commission of a crime would not constitute a [testimonial] statement made in contemplation of prosecution [or
*(Footnote Continued Next Page)*

- 10 -

sitting at the top of her steps, and her boyfriend pushed her down the steps, and she woke up a few hours later." N.T., 9/26/2022, at 38. Sergeant Chedwick further "observed a large visible bruise, [] on the right side, just above her hip area. And she had some knocks, like some bumps on her head. And there [were] red marks which coincided with someone putting a hand around somebody's neck." *Id.* at 40. At the conclusion of trial, and in rendering its decision, the trial court stated that its finding of guilt was "based primarily on the testimony of [Sergeant] Jason Chedwick." *Id.* at 82. As such, we find that Moore's testimony was not singularly important to the Commonwealth's case. Sergeant Chedwick testified to the presence of physical evidence of Moore's injuries, which were consistent with her statements to the police and, thus, corroborated material points including the evidentiary principles that supported the admission of her comments. Moreover, defense counsel extensively cross-examined Moore about her credibility and she consistently stated that she was too intoxicated to remember precisely what happened to her and never outright implicated Appellant. Finally, we examine the overall strength of the Commonwealth's

---

in violation of the Confrontation Clause]. In such a situation, the declarant is not subject to police interrogation and is not influenced by reason or deliberation. The declarant volunteers this information in effort to remedy a perceived emergency, not to create a record against another for use in a future prosecution."). Here, Moore made the statements at issue to Sergeant Chedwick minutes after she regained consciousness and called the police. She was visibly shaking and crying from the stress of the event. Her nervous excitement continued to dominate while her reflective processes remained in abeyance.

- 11 -

case. Here, Moore testified that she was pushed from behind when she was alone in her residence with Appellant. She specifically rejected the suggestion that a ghost pushed her. Taken all together, we conclude that there is no reasonable possibility that Appellant's inability to cross-examine Moore about her pending DUI conviction contributed to Appellant's conviction and the trial court's error precluding the evidence was harmless. Accordingly, Appellant's first issue lacks merit.

Next, citing 42 Pa.C.S.A. § 9760,[5] Appellant argues that the trial court failed to credit him for time for the 120 days he spent in pre-trial custody. Appellant's Brief at 11-14. Appellant asserts, "[i]nstead, the [c]ourt sentenced [Appellant] to one year of probation, to complete the Batterer's Intervention Program, and to complete his current treatment program with the Renewal Center, and made the sentence effective September 26, 2022, without mentioning or accounting for the 120 days [Appellant] was incarcerated." *Id.* at 12. Appellant concedes that "research did not reveal a

_____

[5] The Pennsylvania Sentencing Code, with regard to awarding credit for time served, provides in pertinent part, that the court shall give credit as follows:

> (1)   Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of conduct on which such a charge is based. Credit shall include credit for the time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S.A. § 9760(1).

- 12 -

Pennsylvania Superior or Supreme Court case which controls the outcome of this case – that is, a case where a defendant was in custody before trial [] but whose sentence was limited to a period of probationary supervision." ***Id.*** However, Appellant suggests that the trial court erred by "focusing on the first clause of 42 Pa.C.S.A. § 9760; it focused on 'time spent in custody as a result of a criminal charge for which a prison sentence is imposed,' instead of focusing on the second clause, 'time spent in custody … as result of conduct on which such charge is based.'" ***Id.*** at 13. Appellant maintains that such "analysis is problematic because it could result in a defendant being subject to supervision for, or serving more time in prison than, is statutorily authorized." ***Id.*** at 14.

On this issue, the trial court decided:

> [Appellant] testified that he was arrested for failing to appear for a court date in this matter and has remained in the Allegheny County Jail or the Renewal Center since that arrest. While the exact date of his incarceration was not placed on the record, it [was] clear to [the trial c]ourt that [Appellant] was incarcerated as result of his failure to appear for a set trial date in this case. However, in this instance, a prison sentence was not imposed. [Appellant] was given a period of probation. [The trial c]ourt issued an order permitting [Appellant] to remain at [the] Renewal [Center] for an additional four (4) days **at his request** to finish a drug and alcohol program. However, this was not part of his sentence. As [Appellant] was not sentenced to a period of incarceration, he is not entitled to credit for time served.

Trial Court Opinion, 4/18/2023, at 5 (record citations omitted; emphasis in original).

We adhere to the following standards:

A claim asserting that the trial court failed to award credit for time served implicates the legality of the sentence. Issues relating to the legality of a sentence are questions of law. Our standard of review over such questions is *de novo* and the scope of review is plenary.

*Commonwealth v. Gibbs*, 181 A.3d 1165, 1166 (Pa. Super. 2018) (case citations omitted). "The principle underlying [Section 9760] is that a defendant should be given credit for time spent in custody prior to sentencing for a particular offense." *Commonwealth v. Fowler*, 930 A.2d 586, 595-596 (Pa. Super. 2007) (citation and emphasis omitted). "The easiest application of 42 Pa.C.S.A. § 9760(1) is when an individual is held in prison pending trial, or pending appeal, and faces a **sentence of incarceration**: in such a case, credit clearly would be awarded." *Id.* (citation and brackets omitted; emphasis added).

Here, Appellant received a sentence of probation. Based upon our standard of review and applicable law, we determine that Appellant was not entitled to credit for time served for his pre-trial detention under Section 9760. Appellant has not provided legal authority for his proposition, and our independent research has not revealed any. Credit for time served applies only to a subsequent sentence of total incarceration, rather than a sentence of probation, when an individual is held in prison pending trial. Moreover, as Appellant implicitly concedes, his sentence did not exceed the statutory maximum for the offense of simple assault. As such, we conclude that

Appellant did not receive an illegal sentence. Accordingly, Appellant's sentencing claim lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

FILED: 1/8/2024